No. 122,169

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LUCAS TARELL BAKER,
*Appellant*.

SYLLABUS BY THE COURT

1.

The determination of an offender's criminal history score is governed by the revised Kansas Sentencing Guidelines Act (KSGA). Whether a sentencing court has correctly interpreted and applied the provisions of the KSGA is a question of law which this court reviews de novo.

2.

In *State v. Wetrich*, 307 Kan. 552, 561-62, 412 P.3d 984 (2018), the Kansas Supreme Court held that the term "comparable offense" as used in K.S.A. 2017 Supp. 21-6811(e)(3) required the sentencing court to compare the elements of the prior out-of-state crime to the elements of the Kansas crime, and if the out-of-state crime did not possess elements that were identical to or narrower than the elements of the Kansas offense to which it was being compared, the out-of-state conviction had to be classified as a nonperson offense.

3.

The Kansas Legislature amended K.S.A. 21-6811(e)(3), adding subsection B, and providing a new framework for deciding whether prior out-of-state crimes should be

classified as person or nonperson offenses in calculating criminal history when a defendant is sentenced on or after May 23, 2019, the date the amended statute became effective. This framework, which requires a sentencing judge to compare the enumerated circumstances listed in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i) or (ii) to the elements of the prior out-of-state conviction, legislatively overrules the comparable offense analysis previously required by the rule in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018).

4.

When the Legislature revises an existing law, the appellate courts presume that the Legislature intended to change the law as it existed prior to the amendment.

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed September 18, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.

STANDRIDGE, J.: Lucas Tarell Baker pled guilty to one count of aggravated domestic battery. At sentencing, Baker objected to his criminal history score. He argued that his 2015 Missouri conviction for resisting arrest was improperly categorized as a person felony, which incorrectly enhanced his sentencing range. The district court disagreed and found that Baker's prior out-of-state conviction was appropriately scored. The court then sentenced Baker to 29 months in prison. Baker now appeals the court's criminal history score finding and his sentence, asserting the district court erred in scoring his 2015 Missouri conviction as a person felony and, in turn, enhancing his sentence. Finding no error, we affirm.

2

As the issue in this case is purely a legal one, the facts of the underlying criminal offense are largely irrelevant except that Baker committed the underlying offense on May 25, 2019. On May 28, 2019, the State charged Baker with one count of aggravated assault, a severity level 7 person felony, and one count of criminal possession of a weapon, a severity level 8 nonperson felony. The State amended the charges on July 5, 2019, to include an additional count of aggravated domestic battery, a severity level 7 person felony. Baker pled guilty to the aggravated domestic battery charge on September 9, 2019. In return, the State agreed to dismiss the remaining charges and allowed Baker the option to argue for a departure sentence. The district court accepted the plea, found Baker guilty, and dismissed the remaining counts per the parties' agreement. A presentence investigation (PSI) report was ordered and the matter was set for sentencing.

The PSI report was filed on October 30, 2019. According to the report, Baker had four prior Missouri felony convictions: three from July 2015 and one from May 2014. Two were scored as person felonies and two were scored as nonperson felonies for the purposes of enhancing Baker's sentence. As a result, the PSI report calculated Baker's criminal history score as B. Before sentencing, Baker filed an objection to his criminal history score. He argued that his 2015 Missouri conviction for resisting arrest was improperly scored as a person felony. He asserted that the comparable Kansas offense was interference with a law enforcement officer and that because the Kansas offense was a nonperson felony, the Missouri conviction should be also scored as a nonperson felony. Baker argued this should have reduced his criminal history score to C. The State filed a response arguing that the comparable Kansas offense was fleeing or attempting to elude a law enforcement officer, which is a person felony, and therefore Baker's Missouri conviction was properly scored as a person felony. Alternatively, the State asserted that the comparable offense analysis was not the proper framework to apply as the Kansas

Legislature amended the relevant statute—K.S.A. 2019 Supp. 21-6811(e)—and created a new framework that is applicable in this case. In applying the new statutory framework, the State argued that Baker's Missouri conviction was properly scored as a person felony because the circumstances enumerated in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b) and (c) were present in the elements of the Missouri offense.

At the sentencing hearing on October 30, 2019, the district court took up arguments regarding Baker's objection to his criminal history score. Notably, Baker's counsel conceded that the new framework outlined in K.S.A. 2019 Supp. 21-6811(e)(3) applied for the purposes of evaluating Baker's criminal history score. However, counsel argued that the elements of the Missouri offense did not match any of the circumstances listed in the amended statute and the conviction should be categorized as a nonperson felony for that reason. The district court found that the new statutory framework was applicable. In applying that framework, the court ruled that the prior Missouri offense counted as a person felony for the reasons stated in the State's response—i.e., the circumstances enumerated in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b) and (c) were present in the elements of the prior Missouri offense. Baker's criminal history score of B remained unchanged, and the district court sentenced Baker to 29 months in prison based on that score. Baker timely appeals the district court's criminal history score finding and his sentence.

ANALYSIS

The determination of an offender's criminal history score is governed by the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2019 Supp. 21-6801 et seq. Whether a sentencing court has correctly interpreted and applied the provisions of the KSGA is a question of law which this court reviews de novo. *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015). Likewise, whether a prior conviction was properly classified

as a person or nonperson crime for criminal history purposes is a question of law subject to unlimited review. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

On appeal, Baker challenges the validity of his sentence. Specifically, Baker asserts that the district court erred in scoring his prior 2015 Missouri conviction for resisting arrest as a person felony. He alleges that this wrongful classification caused the court to miscalculate his criminal history score to B, which in turn improperly enhanced his sentence. Baker contends that his 2015 Missouri conviction must be classified as a nonperson felony pursuant to the Kansas Supreme Court's holding in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), and the plain language of the applicable statute, K.S.A. 2019 Supp. 21-6811(e)(3)(B).

In considering an out-of-state conviction, the sentencing court makes two classifications after the State proves that the conviction exists. First, the court determines under K.S.A. 2019 Supp. 21-6811(e)(2) whether the prior conviction is a misdemeanor or a felony based on the law of the state where the defendant was convicted. The statute also provides: "If a crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas." K.S.A. 2019 Supp. 21-6811(e)(2)(A). Baker's prior 2015 Missouri conviction was a felony, and Baker does not dispute that fact on appeal. Second, the sentencing court determines whether the prior out-of-state conviction is a person or nonperson offense. K.S.A. 2019 Supp. 21-6811(e)(3). Although the parties agree that K.S.A. 2019 Supp. 21-6811(e)(3) applies here, they disagree about the classification that results when the statute is applied to the particular facts of this case. To fully understand the parties' arguments on appeal, we provide a brief historical analysis.

Before the 2019 amendment, K.S.A. 21-6811(e)(3) required a sentencing court to determine whether a prior out-of-state conviction was a person or nonperson offense by comparing the out-of-state conviction statute to the "comparable offense" in effect in Kansas on the date the current crime was committed. K.S.A. 2018 Supp. 21-6811(e)(3);

see also *Keel*, 302 Kan. at 590 ("[T]he classification of a prior conviction . . . as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed."). If there was no comparable Kansas crime, the sentencing court had to classify the prior conviction as a nonperson crime. However, if there was a comparable crime and Kansas classified it as a person crime, the out-of-state conviction had to also be scored as a person crime. K.S.A. 2018 Supp. 21-6811(e)(3).

In March 2018, the Kansas Supreme Court decided *Wetrich*. The *Wetrich* court defined what the term "comparable offense" meant as used in K.S.A. 2017 Supp. 21-6811(e)(3). Specifically, it held that the analysis of whether crimes are comparable requires the court to compare the elements of the out-of-state crime to the elements of the Kansas crime. If the out-of-state crime did not possess elements that were identical to or narrower than the elements of the Kansas offense to which it was being compared, the out-of-state conviction had to be classified as a nonperson offense. 307 Kan. at 561-62.

However, in May 2019, the Kansas Legislature amended K.S.A. 21-6811(e)(3), adding subsection (B). The new amendment went into effect on May 23, 2019—two days before Baker committed the underlying crime in this case. K.S.A. 2019 Supp. 21-6811(e)(3)(B) now provides in relevant part:

> "(B) In designating a felony crime as person or nonperson, the felony crime shall be classified as follows:
>
> (i) An out-of-state conviction or adjudication for the commission of a felony offense, or an attempt, conspiracy or criminal solicitation to commit a felony offense, shall be classified as a person felony if one or more of the following circumstances is present as defined by the convicting jurisdiction in the elements of the out-of-state offense:
>
> . . . .

(b) threatening or causing fear of bodily or physical harm or violence, causing terror, physically intimidating or harassing any person;

(c) bodily harm or injury, physical neglect or abuse, restraint, confinement or touching of any person, without regard to degree; [or]

(d) the presence of a person, other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance;

. . . .

(ii) An out-of-state conviction or adjudication for the commission of a felony offense, or an attempt, conspiracy or criminal solicitation to commit a felony offense, shall be classified as a person felony if the elements of the out-of-state felony offense that resulted in the conviction or adjudication necessarily prove that a person was present during the commission of the offense. For purposes of this clause, the person present must be someone other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance. The presence of a person includes physical presence and presence by electronic or telephonic communication.

(iii) An out-of-state conviction or adjudication for the commission of a felony offense, or an attempt, conspiracy or criminal solicitation to commit a felony offense, shall be classified as a nonperson felony if the elements of the offense do not require proof of any of the circumstances in subparagraph (B)(i) or (ii)."

Notably, the Legislature removed the term "comparable offense" from this iteration of the statute, which created some potential confusion as to whether the *Wetrich* rule applies to cases where the underlying crimes were committed on or after May 23, 2019. In addition, the new framework created a requirement that the sentencing judge compare the enumerated scenarios listed in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i) or (ii) to the elements of the prior out-of-state conviction. The new framework removed the language requiring a sentencing judge to compare the elements of the prior out-of-state offense to the elements of the similar Kansas offense, which effectively prevents the sentencing judge from engaging in a side-by-side elemental comparison. If one of the circumstances listed in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i) or (ii) is present on the

7

face of the elements of the out-of-state offense, the sentencing judge must find that the out-of-state conviction is a person offense. If none of those circumstances are present, K.S.A. 2019 Supp. 21-6811(e)(3)(B)(iii) requires a sentencing judge to find that the out-of-state conviction is a nonperson offense.

Given this historical analysis, we now turn to the parties' specific arguments on appeal. Baker argues that the 2019 amendment to K.S.A. 21-6811(e)(3)(B) requires a sentencing court to apply the *Wetrich* rule. Although the term "comparable offense" no longer appears in the statutory text, Baker argues the sentencing court still must compare the elements of an out-of-state statute and compare it with the circumstances enumerated in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i) and (ii). In support of his argument that the *Wetrich* rule still applies to the amended statute, Baker specifically claims the elements of the out-of-state statute must be identical or narrower than the statutory enumerations— not something close or similar. Applying *Wetrich* and the amended statute here, Baker contends that none of the elements of his prior Missouri conviction are present in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i) and (ii); therefore, his 2015 Missouri conviction should have been scored as a nonperson felony.

The State counters that the 2019 amendment to K.S.A. 21-6811(e)(3) legislatively overruled *Wetrich*, and as such, the new statutory text should not be applied in conjunction with the *Wetrich* rule. In applying the new statutory framework for classifying a prior out-of-state offense as a person or nonperson crime, the State asserts that Baker's 2015 Missouri conviction for resisting arrest was correctly categorized as a person felony pursuant to K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b), (c), and (d).

When the Legislature revises an existing law, the appellate courts presume that the Legislature intended to change the law as it existed prior to the amendment. *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012); *State v. Englund*, 50 Kan. App. 2d 123, 126, 329 P.3d 502 (2014). This is because the appellate courts generally presume

that the Legislature acts with full knowledge about the statutory subject matter, including prior and existing law and judicial decisions interpreting the same. *State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015). So the State is likely correct that the new framework outlined in K.S.A. 2019 Supp. 21-6811(e)(3)(B) legislatively overrules *Wetrich*. Based on a plain reading of the statute, the Legislature specifically removed the language from the provision that triggered application of the *Wetrich* rule—i.e., "comparable offense"— and created an entirely new method for analyzing whether a prior out-of-state conviction should be scored as a person or nonperson offense. And even if there was some ambiguity in the language of the 2019 statutory amendment, the legislative history of the amendment also reflects the Legislature intended K.S.A. 2019 Supp. 21-6811(e)(3)(B) to legislatively overrule the rule announced in *Wetrich*. Specifically, the history makes clear that this amendment was made in direct response to the *Wetrich* ruling. See, e.g., Minutes, Sen. Judiciary Comm., March 19, 2019, attach. 1-7; *Clarifying the Definition of Comparable Offense under the Kansas Criminal Code: Hearing on H.B. 2048* (statements of Jason Thompson, Natalie Chalmers, Aaron Breitenbach, Jacob Gonteskey, Kim Parker, and Jennifer Roth).

Eliminating the requirement that elements of the out-of-state statute must be identical to or narrower than the statutory enumerations would not, as Baker contends, run afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Apprendi* requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Significantly, the new framework does not allow a sentencing judge to go beyond the elements and conduct additional fact-finding to determine how the prior out-of-state offense should be scored. See K.S.A. 2019 Supp. 21-6811(e)(3)(B).

Baker also notes that the United States Supreme Court's rulings in *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Mathis v.*

9

*United States*, 579 U.S. __, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016), require a sentencing court to apply the *Wetrich* rule even in light of the Legislature's amendment to K.S.A. 2019 Supp. 21-6811(e). However, this argument is not persuasive as the cases are distinguishable. *Descamps* and *Mathis* apply the identical-or-narrower-than rule in a context where the elements of a prior offense are being compared to the elements of a base offense, i.e., there is a side-by-side elemental comparison being done. But K.S.A. 2019 Supp. 21-6811(e)(3)(B) does not require a side-by-side elemental comparison of the out-of-state statute and the comparable Kansas offense—it simply requires a district court to look at the circumstances outlined in the statute to see if any of those circumstances are present in the elements of the out-of-state offense. Nothing in either *Descamps* or *Mathis* requires state courts to employ an identical-or-narrower-than elemental analysis when interpreting and applying state-specific sentence-enhancing statutes. We reject the notion that *Descamps* and *Mathis* require application of the *Wetrich* rule in conjunction with the new amendment.

Turning to the facts presented here, the district court found that Baker's prior conviction should be scored as a person felony because the circumstances outlined in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b) and (c) were present in the elements of the Missouri offense. But as shown below, we find it unlikely that K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b) and (c) apply in this case. However, K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(d) does apply.

Baker previously was convicted in Missouri for felony resisting arrest "by fleeing [and] creating a substantial risk of serious injury/death to any person" in violation of Mo. Rev. Stat. § 575.150 (2009). To convict Baker of this crime, the State of Missouri had to establish the following elements:  (1) Baker knew that a law enforcement officer was making an arrest or stop of a person or vehicle, (2) he resisted the arrest or stop by fleeing from the officer, (3) he did so with the purpose of preventing the officer from completing the arrest or stop, and (4) he fled in a manner that created a substantial risk of serious

physical injury or death to any person. See Mo. Rev. Stat. § 575.150; *State v. Clark*, 263 S.W.3d 666, 673 (Mo. App. 2008), *overruled in part on other grounds by State v. Daws*, 311 S.W.3d 806 (Mo. 2010); *State v. St. George*, 215 S.W.3d 341, 346 (Mo. App. 2007). Under the relevant subsection of K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i), Baker's prior crime must be classified as a person felony if one or more of the following circumstances is present as defined by the convicting jurisdiction in the elements of the out-of-state offense:

"(b) threatening or causing fear of bodily or physical harm or violence, causing terror, physically intimidating or harassing any person;

"(c) bodily harm or injury, physical neglect or abuse, restraint, confinement or touching of any person, without regard to degree; [or]

"(d) the presence of a person, other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance."

When comparing the elements of felony resisting arrest "by fleeing [and] creating a substantial risk of serious injury/death to any person" in violation of Mo. Rev. Stat. § 575.150 to the circumstances enumerated in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b), (c), and (d), it becomes clear that only subsection (d) is truly present within these elements.

Subsection (b) provides that a district court must find that a prior out-of-state conviction is a person offense if it is clear from the elements of the prior statute of conviction that a defendant threatened or caused fear of bodily or physical harm or violence, caused terror, or physically intimidated or harassed any person. K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b). The State argues that the element of creating "a substantial risk of serious injury/death to any person" in the Missouri statute is the same as threatening or causing fear of bodily or physical harm or violence or causing terror. The district court agreed with the State's position. Yet Baker correctly points out that there is

competing mens rea underlying these two scenarios: creation of a substantial risk of serious injury or death can encompass reckless behavior, while threatening or causing fear in another person of bodily or physical harm or violence likely does not. In fact, the latter appears to be more intentional on its face, requiring a higher culpability level akin to the levels found in assault cases, aggravated assault cases, or some similar case. For example, a person can create a substantial risk of serious injury or death by driving a car at a high rate of speed into oncoming traffic or into an area with a large concentration of pedestrians. A reasonable fact-finder could conclude that such reckless driving could potentially seriously injure or kill another driver or pedestrian without finding that the driver did so to specifically threaten or cause fear of bodily or physical harm or violence in the other drivers or pedestrians. To find the latter, additional evidence as to the driver's intent—more than simply driving at a high speed into oncoming traffic or into an area where there are several pedestrians—would be needed to establish whether the driver drove in such a way as to purposely threaten or cause fear of bodily or physical harm or violence in the other drivers or pedestrians.

Interestingly, the above example applies here. At sentencing, the State informed the district court of some of the underlying facts supporting Baker's 2015 Missouri conviction for resisting arrest: Baker resisted arrest, he fled from police in his car, and he engaged police in a high-speed chase going the wrong direction down the street into oncoming traffic. The State reasoned to the district court that Baker's behavior in that case would have certainly threatened or caused fear of bodily harm or injury to the officers involved in the chase, and the district court ultimately agreed. However, the State and district court conveniently ignore that this level of culpability is not readily apparent in strictly analyzing the elements of the Missouri offense. To find that level of culpability, the district court would have had to engage in additional fact-finding—e.g., review police or other drivers' statements and testimony—to find that Baker specifically intended to threaten or cause fear of bodily or physical harm or violence in the police officers or other drivers involved. What is more, the State of Missouri did not have to

12

prove that level of culpability in convicting Baker of the resisting arrest offense, meaning that no such facts would exist. Thus, any additional fact-finding would likely violate the principles set forth in *Apprendi* and *Descamps*. For these reasons, it is likely that the district court was incorrect in finding that the circumstances outlined in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b) were present in the elements of Baker's 2015 Missouri conviction. Consequently, we find it improper for the court to have categorized that conviction as a person felony based on subsection (b).

Second, in comparing only the above elements to subsection (c), a sentencing judge could not reasonably find that Baker caused bodily harm or injury to another. Nor could a sentencing judge reasonably find that Baker physically neglected, abused, restrained, or in any way battered another person. The elements only show that he resisted arrest by fleeing from law enforcement officers and that he fled in such a manner that created a *substantial risk* of serious physical injury or death to another. Based on the elements alone, a substantial risk of injury or death is not the same as actually causing bodily harm or injury to another. Because of this, the district court was incorrect in finding that Baker's 2015 Missouri conviction was a person felony based on subsection (c).

The State relied only on subsections (b) and (c) to support its argument that Baker's 2015 Missouri conviction should be classified as a person offense. And the district court adopted the analysis in the State's brief as its own in deciding that the prior conviction should be classified as a person offense. So neither the State nor the sentencing court compared the elements of the 2015 Missouri crime to the circumstances set forth in subsection (d), which provides for an offense to be automatically categorized as a person offense if a person other than a defendant is present during commission of the out-of-state offense. K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(d). The elements of the Missouri statute that criminalizes resisting arrest reflect that this circumstance is present: Baker fled from one or more police officers. The police officers were present during

13

commission of the crime because they were trying to arrest Baker, and Baker fled from them. The police officers are not Baker, they were not charged accomplices of Baker's, and they were not assisting Baker in certain drug dealings. So Baker's prior conviction was properly calculated as a person offense under subsection (d). Although the district court failed to apply K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(d) in reaching that conclusion, this court can affirm the district court's ruling and Baker's sentence for this reason. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (finding that if district court reaches correct result, its decision will be upheld even though it relied on wrong ground or assigned erroneous reasons for its decision).

Affirmed.